UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ARTHUR WEST,<br><br>Plaintiff,<br><br>v.<br><br>ERIC HOLDER, et al.,<br><br>Defendants. | Civil Action No. 14-98 (JDB) |

## MEMORANDUM OPINION

Plaintiff Arthur West brings this action against a group of United States government and Washington state defendants: Eric Holder, Attorney General of the United States; the United States Department of Justice; Jay Inslee, Governor of the State of Washington; and Sharon Foster, Chair of the Washington State Liquor Control Board.[1] West seeks "declaratory and injunctive relief" for a "major federal action": namely, that communications between state and federal defendants concerning the Department of Justice's policy towards Washington's marijuana legislation "[rose] to the level of substantial and expressive harm to the structure of federalism in violation of the 9th and 10th Amendments and the common law Anti-commandeering Doctrine." 2d Am. Compl. [ECF No. 14] at 1. The state defendants have filed a motion to dismiss for lack of personal jurisdiction under Federal Rule 12(b)(2). For the reasons discussed below, the Court will grant the state defendants' motion to dismiss.

---

[1] For ease of reference, defendants Holder and the United States Department of Justice will be referred to collectively as "federal defendants." Jay Inslee and Sharon Foster will be referred to collectively as "state defendants."

1

## BACKGROUND

Washington recently enacted an initiative measure ("I-502") concerning the distribution and possession of marijuana for recreational purposes, which included legislation providing that marijuana use and possession do not constitute criminal or civil offenses under Washington state law. Wash. Rev. Code § 69.50.360. Because possessing marijuana is still illegal under federal law, I-502 raised the question of whether the Department of Justice would enforce the federal marijuana prohibition within the state. As a result, federal and state officials began a series of communications that culminated in a memorandum issued by the Department of Justice outlining the federal government's positions and priorities in regards to drug enforcement in the state of Washington. Defs.' Renewed Mot. to Dismiss [ECF No. 17] ("Defs.' Mot.") at 3.

West claims that the communications between federal and Washington state officials violated the "anti-commandeering doctrine" and a number of constitutional amendments. 2d Am. Compl. at 1. Although his allegations are not entirely clear, West appears to allege that when the federal government issued its memorandum concerning I-502, it unconstitutionally "commandeered" Washington's control over marijuana policy within the state. Id. at 19. West also claims that "defendants failed . . . to consider [any] reasonably foreseeable impacts to the urban and natural environment under [the National Environmental Policy Act, 42 U.S.C. 4331]," and requests a declaratory judgment and some unspecified injunctive relief. Id. at 2, 19. In response, the state defendants have moved to dismiss for lack of personal jurisdiction.[2]

## LEGAL STANDARD

A plaintiff bears the burden of establishing a court's personal jurisdiction over a defendant who moves to dismiss the claims against him under Rule 12(b)(2). See Mwani v. bin Laden, 417 F.3d 1, 7 (D.C. Cir. 2005). "Moreover, to establish a prima facie case, plaintiffs are

---

[2] Federal defendants only recently entered an appearance, through the filing of a motion to dismiss.

not limited to evidence that meets the standards of admissibility required by the district court. Rather, they may rest their argument on their pleadings, bolstered by such affidavits and other written materials as they can otherwise obtain." Id. at 7. Nevertheless, a plaintiff must allege "specific facts upon which personal jurisdiction may be based," Blumenthal v. Drudge, 992 F. Supp. 44, 53 (D.D.C. 1998), and cannot rely on conclusory allegations, see Elemary v. Phillipp Holzmann AG, 533 F. Supp. 2d 116, 121 (D.D.C. 2008).

## **DISCUSSION**

Under Federal Rule 4(k), a federal court has personal jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A). Thus, this Court has personal jurisdiction over the state defendants if a District of Columbia court could exercise jurisdiction over them.

There are two distinct variants of personal jurisdiction: (1) general jurisdiction, which allows a court to entertain a claim against a defendant "without regard to the claim's relationship vel non to the defendant's forum-linked activity"; and (2) specific jurisdiction, for "controversies based on acts of a defendant that touch and concern the forum." See Kopff v. Battaglia, 425 F. Supp. 2d 76, 81 (D.D.C. 2006) (citing Steinberg v. Int'l Criminal Police Org., 672 F.2d 927, 928 (D.C. Cir. 1981)). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2853 (2011). Specific jurisdiction requires a two-step inquiry: "first, jurisdiction over the defendant must be authorized by the forum's long-arm statute, here D.C. Code § 13-423"; and, second, the "exercise of that jurisdiction must satisfy the federal requirement of constitutional due process." D'Onofrio v. SFX Sports Grp., Inc., 534 F. Supp. 2d 86, 90 (D.D.C. 2008) (citing United States v. Ferrara, 54 F.3d 825, 828 (D.C. Cir. 1995)).

## I. Personal Jurisdiction Over Inslee

This Court may exercise personal jurisdiction over Inslee if it can establish general or specific jurisdiction over him. Kopff, 425 F. Supp. 2d at 81. Inslee is not domiciled in the District of Columbia, so the Court may not exercise general jurisdiction over him under the relevant D.C. statute. See D.C. Code § 13-422. For this Court to exercise specific jurisdiction over Inslee, his conduct must fall within the District's long-arm statute. Ferrara, 54 F.3d at 828. That statute provides, in part:

> A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's—
>
> (1) Transacting any business in the District of Columbia;
> (2) Contracting to supply services in the District of Columbia;
> (3) Causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;
> (4) Causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business . . . in the District of Columbia;
> (5) Having an interest in, using, or possessing real property in the District of Columbia;
> (6) Contracting to insure or act as surety for . . . [a] contract . . . to be performed within the District of Columbia…;
> (7) Martial or parent and child relationship in the District of Columbia…

D.C. Code § 13-423(a).

As a preliminary matter, it is unclear whether West brings this action against Inslee individually or in his capacity as a state official. If Inslee is sued in his individual capacity, the Court must determine whether his conduct fits into one of the seven provisions of the long-arm statute. If Inslee is sued in his official capacity, however, the inquiry is more complicated. A suit brought against an official in his official capacity is generally considered to be a suit against the state. Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989). D.C's long-arm statute does not apply to states, though, meaning that the Court would be unable to exercise personal jurisdiction in this case. Ferrara, 54 F.3d at 828. An exception to this general rule may transform

the suit against Inslee in his official capacity to one in his individual capacity <u>for the purposes of the long-arm statute</u>. <u>See</u> <u>Ex Parte Young</u>, 209 U.S. 123 (1908). The Court will examine these possibilities in turn.

### a) Inslee Sued in His Individual Capacity

West does not argue that Inslee's conduct as an individual falls under any of the provisions of the long-arm statute, and it is not clear that any of the provisions apply. West does not allege that Inslee caused "tortious injury" under subsections (a)(3) or (a)(4). <u>See</u> <u>GTE Media Servs., v. BellSouth Corp.</u>, 199 F.3d 1343, 1347 (D.C. Cir. 2000) (noting that "tortious injury" under subsection (a)(4) is narrowly construed). And even if West's allegations did concern "tortious injury," that injury was not felt "in the District of Columbia" as the statute requires, because any policies resulting from meetings between Inslee and federal officials affected marijuana enforcement procedures in the state of <u>Washington</u>, not in the District. <u>See</u> D.C. Code §§ 13-423(a)(3), (a)(4). West does not allege that Inslee's communications with the federal government resulted in any sort of contract—which might satisfy subsections (a)(2) or (a)(6)— and although Inslee maintains a liaison office in the District, West's claims do not arise from Inslee's property interest in that office, so subsection (a)(5) is not satisfied. The marital relationship provision, section 13-423(a)(7), is plainly inapplicable here.

The only provision of the statute that could potentially be relevant to Inslee's contacts with the District is the "transacting any business" provision, subsection (a)(1). But contacts falling under the "transacting any business provision" usually must be commercial. <u>See, e.g.</u> <u>Mouzavires v. Baxter</u>, 434 A.2d 988, 992 (D.C. 1981) ("It is now well-settled that the 'transacting any business' provision embraces those contractual activities of a nonresident defendant which cause a consequence here."). Further, some courts have held that commercial

5

activities do not satisfy the provision unless the activities were directly related to the transaction of business within the District. See Brunson v. Kalil & Co., 404 F. Supp. 2d 221, 234 (D.D.C. 2005) (holding that defendant's communications with a company in the District for the purpose of receiving a commission did not constitute transacting any business under the statute, because "[t]he contact arose out [of] a desire to be paid services rendered, not out of any desire to do business in the District of Columbia"); see also Cellutech, Inc. v. Centennial Cellular Corp., 871 F. Supp. 46, 49-50 (D.D.C. 1994) (holding that negotiations conducted by mail and wire into the District concerning a contract that would be performed outside of the District were insufficient to establish jurisdiction under the long-arm statute).

West does not allege that Inslee's coordination with federal officials constituted commercial activity or that Inslee was transacting business within the District. West also does not cite any cases supporting an interpretation of the "transacting any business" provision that includes non-commercial activity. Because he has not pointed to any contacts between Inslee and the District that fall under the provisions of the long-arm statute, this Court lacks specific jurisdiction over Inslee to the extent he is being sued in his individual capacity.

### b) Inslee Sued in His Official Capacity

A suit against a state official in his official capacity is usually treated as a suit against the state. Will, 491 U.S. at 71. Whether that is true for the purposes of the personal jurisdiction analysis is uncertain. See Ferrara, 54 F.3d at 831. One thing is certain: a state is not a "person" under the Due Process clause, see South Carolina v. Katzenbach, 383 U.S. 301, 323-23 (1966), so if the suit is considered to be against the state, the due-process prong of the personal jurisdiction analysis is effectively satisfied. But that leaves the long-arm statute.

States do not fall under D.C.'s long-arm statute, because the statute only allows the District to "exercise personal jurisdiction over a person," D.C. Code § 13-423(a) (emphasis added), and "person" is defined in the D.C. Code as "an individual, his executor, administrator, or other personal representative, or a corporation, partnership, association, or any other legal or commercial entity." D.C. Code § 13-421. States are not considered to be "legal or commercial entit[ies]," meaning that they are not included under the long-arm statute. Ferrara, 54 F.3d at 832. In most instances, then, a suit against Inslee in his official capacity would operate as a suit against the state of Washington, and the D.C. long-arm statute would not allow this Court to exercise personal jurisdiction over the state of Washington.

There is a potential exception, however, to this general rule. In Ex Parte Young, the Supreme Court held that a claim brought against a state officer for allegedly acting unconstitutionally "[strips the official] of his official or representative character and [subjects him] in his person to the consequences of his individual conduct." 209 U.S. at 160; see also Verizon Md. Inc. v. Pub. Serv. Comm'n, 535 U.S. 635, 645 (2002) (extending the exception to include "ongoing violations of federal law"). The Ex Parte Young exception primarily operates to prevent a state official from invoking sovereign immunity under the Eleventh Amendment when she is sued in her official capacity for violating federal law. See Cnty. Bd. of Arlington VA v. U.S. Dep't of Transp., 705 F. Supp. 2d 25, 30 (D.D.C. 2010) ("[P]laintiffs name state officials . . . in order to avoid the Eleventh Amendment bar to bringing a suit directly against a State.").

It is an open question in this circuit whether, under the D.C. long-arm statute, a court may exercise personal jurisdiction over an official sued under Ex Parte Young. The suit could still, for example, be considered to be against the state for the purposes of personal jurisdiction. On the other hand, an official who is "stripped of his official or representative character" might be

7

viewed as an individual for the purposes of personal jurisdiction. Ex Parte Young, 209 U.S. at 160. But no matter: even if the suit falls under Ex Parte Young, and even if it is therefore considered to be a suit against Inslee in his individual capacity for the purposes of personal jurisdiction, the Court could not exercise jurisdiction over him for the reasons already discussed above. Hence, regardless of whether West sues Inslee in his individual or official capacity (or under Ex Parte Young), because Inslee's conduct is not covered by D.C.'s long-arm statute this Court may not exercise personal jurisdiction over him.

## II. Personal Jurisdiction Over Foster

West also argues that this Court can exercise personal jurisdiction over Foster, but this argument fails for the same reasons that the Court cannot exercise personal jurisdiction over Inslee. Foster is not domiciled in the District of Columbia. If Foster is sued in her official capacity, the Court lacks personal jurisdiction for the reasons discussed above. And if Foster is sued in her individual capacity, West does not allege conduct that falls under the long-arm statute. In fact, West alleges almost nothing to allow this Court to exercise personal jurisdiction over Foster individually, save his allegations that "through her agents," Foster "manifested a presence in the D.C. forum." 2d Am. Compl. at 10. This is insufficient for the D.C. long-arm statute; moreover, such bare and conclusory allegations fail to satisfy the requirements of due process. The Due Process Clause constrains this Court in its exercise of personal jurisdiction, see Steinberg, 672 F.2d at 930, and requires that plaintiff s show sufficient "minimum contacts" between "the defendant, the forum, and the litigation," Shaffer v. Heitner, 433 U.S. 203-04 (1977). In establishing "minimum contacts," a plaintiff must allege "specific facts upon which personal jurisdiction may be based." Blumenthal, 992 F. Supp. at 53. West has failed to do so

here. Accordingly, the state defendants' motion to dismiss with respect to Foster will be granted as well.

## **CONCLUSION**

For the foregoing reasons, the Court will grant the state defendants' motion to dismiss for lack of personal jurisdiction. A separate Order has issued on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: August 5, 2014