UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ARTHUR WEST,

    Plaintiff,

    v.

ERIC HOLDER, et al.,

    Defendants.

Civil Action No. 14-98 (JDB)

# MEMORANDUM OPINION

Plaintiff Arthur West, an Olympia, Washington resident, uses marijuana for medical purposes but objects to the wider use and distribution of "recreational" marijuana authorized by his home state's recently enacted Initiative 502 ("I-502"). To combat this initiative, West sued several state- and federal-government defendants, arguing (among other things) that the Department of Justice's stance toward Washington's marijuana legislation "[rose] to the level of substantial and expressive harm to the structure of federalism in violation of the 9th and 10th Amendments and the common law Anti-commandeering Doctrine." Am. Compl. [ECF No. 14] at 1. This Court previously granted the state defendants' motion to dismiss. See West v. Holder, --- F. Supp. 2d ---, 2014 WL 3834713, at *1 (D.D.C. Aug. 5, 2014). And, for the reasons given below, it will now grant the federal defendants' motion.[1]

## BACKGROUND

Not much has changed since the Court's last decision in this case. Washington's I-502 measure—which legalized the recreational use, possession, and sale of marijuana by licensed individuals within the state—remains on the books. See Wash. Rev. Code § 69.50.360. This

---

[1] See Mem. in Support of Gov't's Mot. to Dismiss [ECF No. 20-1] ("Gov't's Mot."); Pl.'s Opp'n to Gov't's Mot. [ECF No. 24] ("Pl.'s Opp'n"); Gov't's Reply to Pl.'s Opp'n [ECF No. 27].

state measure still conflicts with federal marijuana prohibitions.  See 21 U.S.C. § 841(a)(1) (making it unlawful "to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance"); id. § 812, Schedule I(c)(10) (listing "[m]arihuana" as a controlled substance).  And the Department of Justice still enforces the federal drug laws in Washington in accordance with a memorandum issued by Deputy Attorney General James Cole.  See Mem. from James M. Cole (Aug. 29, 2013), available at http://www.justice.gov/iso/opa/resources/3052013829132756857467.pdf (hereinafter "Cole Memo").  The CliffsNotes version of the memo:  rather than prosecute the full range of federal marijuana violations (e.g., "possession of small amounts of marijuana for personal use on private property"), "Department attorneys . . . [should] focus their enforcement resources and efforts . . . on persons or organizations whose conduct interferes with" certain federal-government priorities (e.g., "[p]reventing the distribution of marijuana to minors").  Id. at 1–2.

West's claims have likewise remained unchanged; they are, indeed, still difficult to decipher.  He believes that the Cole Memo "approv[ed] State recreational marijuana legalization schemes and subject[ed] [the States] to coercive federal conditions and requirements," and thus violated the United States Constitution in various respects.  Am. Compl. at 11–12; see also id. at 17–18 (alleging violations of the Fourth, Fifth, Ninth, Tenth, Eleventh, and Fourteenth Amendments, as well as the Supremacy and Guarantee Clauses).  And as West sees things, the Cole Memo was a "major federal action" that significantly affected the quality of Washington's "natural and urban environment," id. at 1, 11; he thus believes the federal government violated the National Environmental Policy Act ("NEPA") and the Administrative Procedure Act ("APA") when it failed to prepare an environmental impact statement before publishing the memo, see id. at 18–19.  To rectify these supposed constitutional and statutory violations, West

has asked this Court for declaratory and injunctive relief to, essentially, "void" the Cole Memo and order the Department of Justice "to comply with the requirements of NEPA." Id.

## LEGAL STANDARD

The federal defendants have responded to West's complaint, arguing that it ought to be dismissed under either Federal Rule of Civil Procedure 12(b)(1) (for lack of subject-matter jurisdiction) or 12(b)(6) (for failure to state a claim). There are certain standards that apply equally to both rules. For one thing, complaints submitted by plaintiffs proceeding pro se (as West has chosen to do) are reviewed under "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). For another, "in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). The factual allegations in the complaint must therefore be presumed to be true, and West must be given every favorable inference that can be drawn from those facts, see id.—though the Court need not accept as true any "legal conclusion couched as a factual allegation" or make inferences that are unsupported by the facts set out in the complaint, Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (internal quotation marks omitted).

But there are also differences between the rules. The Court has an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority before reaching the merits of any case, and it must dismiss a case when it discovers that it lacks subject-matter jurisdiction over plaintiff's claims. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94–95 (1998). Therefore, West's "factual allegations . . . will bear closer scrutiny in resolving [the government's] 12(b)(1) motion than in resolving [its]12(b)(6) motion for failure to state a claim."

Rangel v. Boehner, 20 F. Supp. 3d 148, 158 (D.D.C. 2013) (internal quotation marks omitted). Moreover, the Court may consider material outside the complaint in determining whether it has jurisdiction to hear this case, so long as it still accepts the factual allegations in the complaint as true. See Jerome Stevens Pharm., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

To survive a motion to dismiss under Rule 12(b)(6), by contrast, West's complaint need only contain "a short and plain statement of the claim showing that [he] is entitled to relief," such that the defendants have "fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). And his "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "In determining whether [West's] complaint fails to state a claim, [the Court] may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the Court] may take judicial notice." EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).

## DISCUSSION

The Court will dismiss this case for two reasons. First, West has not established that he has Article III standing to bring any of his various claims to federal court. That failure divests this Court of jurisdiction over his case. And second, West's claims would require the Court to review a presumptively unreviewable exercise of the Department of Justice's prosecutorial discretion, which raises justiciability concerns under both Rules 12(b)(1) and 12(b)(6).

**I.   WEST LACKS STANDING TO ASSERT HIS CLAIMS**

"Article III of the Constitution limits the judicial power of the United States to the resolution of cases and controversies," Valley Forge Christian Coll. v. Am. United for Separation

4

of Church and State, Inc., 454 U.S. 464, 471 (1982) (internal quotation marks omitted), and the doctrine of standing serves to identify those "'[c]ases' and '[c]ontroversies' that are of the justiciable sort referred to in Article III," Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). "[T]he irreducible constitutional minimum of standing" has three elements: (1) the plaintiff must have suffered an injury in fact; (2) there must be a causal connection between the injury and the conduct complained of; and (3) it must be likely that a favorable decision on the merits will redress the injury. Id. at 560–61.  It is West's burden to show that he meets each of these requirements, id. at 561, and that burden is particularly heavy in cases like this one, where "reaching the merits of the dispute would force [the Court] to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional," Clapper v. Amnesty Int'l USA, 133 S. Ct. 1138, 1147 (2013) (internal quotation marks omitted).

West has not carried his burden here. Begin with the injury requirement. An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S. at 560 (internal quotation marks and citations omitted). But West's alleged injuries do not fit this description. He claims, for example, that the Cole Memo "will . . . make medical patients' . . . access to cannabis difficult or non-existent and more expensive," that the memo "will . . . encourage and financially benefit the black market [in drugs]," and that the federal-government's position "will" lead to "[i]ncreases in crime, traffic, noise, air pollution, and [other] cumulative impacts" on the urban environment. Am. Compl. at 12, 14 (emphasis added). West offers nothing to support his speculative predictions. Such "[a]llegations of possible future injury do not satisfy the requirements of Art[icle] III"—not, at least, where West has failed to allege facts demonstrating that these "threatened" future injuries are "certainly impending." Whitmore v.

Arkansas, 495 U.S. 149, 158 (1990) (internal quotation marks omitted); see also Clapper, 133 S. Ct. at 1148–50 (no standing where injury based on speculative chain of possibilities). West's proposed injuries therefore fall on the conjectural side of the standing line.[2]

But even giving West the benefit of the doubt regarding his "injuries," he cannot show that the federal defendants caused him any harm. As the Supreme Court has explained, "the 'case or controversy' limitation . . . requires that a federal court act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court." Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 41–42 (1976). And here, West alleges only that the federal defendants, by publishing the Cole Memo, "allow[ed] the State of Washington to implement a legal commercialized recreational marijuana taxation and regulation scheme." Am. Compl. at 1 (emphasis added). His quarrel with the federal defendants, in other words, is that they "allowed" or "authorized" or "sanctioned" the harmful actions of Washington State, see id. at 1, 7, 14— which is, of course, a third party not before the court. Does this mean the federal defendants caused West's injuries? That is doubtful, particularly since Washington enacted I-502 well before the Department of Justice issued its memo. See id. at 22. And not where establishing the requisite causal link requires more than a few speculative inferences regarding the thought processes of state decision-makers. See Simon, 426 U.S. at 44–45 ("[s]peculative inferences" are incompatible with "fair[]" causation tracing).

---

[2] West's filings in this case also rely on other, more ephemeral injuries. His complaint suggests that the federal defendants' actions caused "substantial and expressive harm to the structure of federalism," Am. Compl. at 1, and his brief in opposition to the government's motion to dismiss raises the specter of similar harms, see Pl.'s Opp'n at 8 (alleging "potential impacts . . . to the very structure of federalism" and "degradation to . . . our federalist social order"). But these are not "particularized" harms sufficient to confer standing on West. They are, instead, "generalized grievance[s]" that do not belong in the federal courts. See, e.g., Lance v. Coffman, 549 U.S. 437, 442 (2007) ("This injury is precisely the kind of undifferentiated, generalized grievance about the conduct of government that we have refused to countenance in the past.").

6

West responds that he can establish causation without resort to speculation, and he offers two allegations to illustrate the connection between the Cole Memo and Washington's actions. Neither meets the mark. The first is that a state official noted that the recommendations of an interagency task force[3] were made "pursuant to some issues that the federal government pinpointed." Pl.'s Opp'n at 9. But this same official (in the same statement, no less) also admitted that "it's up to the [state] legislature to make the final determinations of what to do with respect to these issues that the federal government has pointed out," id. (emphasis added)—an admission that undercuts West's causation theory. And the theory does not improve with his second allegation. He notes that when the City of Olympia approved the location of a particular recreational marijuana store, it included in its file "a copy of and reference to the conditions in the Cole Memorandum." Id. at 5. But this allegation could mean anything. One might infer (as West does) that the existence of this "copy of and reference to" the Cole Memo means that Olympia would not have approved the store's location if not for the federal defendants' actions. But one could just as easily infer that the memo served as an additional (and, in all likelihood, more stringent) barrier to the store's location, and the memo thus did not cause the city's approval decision but very nearly prevented it.[4] In any event, because speculative inferences

---

[3] Presumably Washington established this interagency task force to make recommendations regarding the state's marijuana legalization efforts. But the Court can only presume; the context surrounding the work of this task force is something of a mystery. West's complaint is silent about the task force. And his opposition brief (which highlights the task-force representative's statement) does nothing to explain the task force's purpose. See Pl.'s Opp'n at 9. West filed an affidavit with the Court almost a week after submitting his brief in opposition, and that affidavit includes a more complete excerpt from the transcript of the motion hearing where the task-force representative offered his statement, see Aff. [ECF No. 26] at 16–19, but the excerpt is otherwise unhelpful in explaining the purpose or authority of the task force within Washington. Thus, in addition to the rationale offered above, the Court finds this task-force statement unpersuasive in the causation analysis.

[4] Indeed, the Court notes that not all inferences are created equal. Although West describes the Cole Memo as a mandate requiring States to take various actions regarding marijuana distribution (or at least authorizing States to take those actions), this is not a fair reading of the document. The memorandum is directed to "all United States Attorneys" and not to any State, Cole Memo at 1; it is framed as "Guidance Regarding Marijuana Enforcement" and not as a binding command, id. (emphasis added); and it reiterates that it "does not alter in any way the Department's authority to enforce federal law . . . regardless of state law," id. at 4. Given the substance of this memo, then, West's

regarding causation remain at play in this case, West has not met his burden to establish standing to pursue these claims in federal court. See Simon, 426 U.S. at 45.

Finally, even if West could demonstrate a cognizable injury that was caused by the federal defendants, he has made no effort to show that his injuries can be redressed by this Court. To support its motion to dismiss for lack of standing, the federal defendants argued that West's alleged injuries could not be redressed because "'it [was] purely speculative that a requested change in government policy w[ould] alter the behavior of regulated third parties that are the direct cause of the plaintiff's injuries.'" Gov't's Mot. at 17 (quoting Nat'l Wrestling Coaches Ass'n v. Dep't of Educ., 366 F.3d 930, 938 (D.C. Cir. 2004)). West failed to respond to the government's arguments on this score. Nowhere in his opposition brief does he attempt to distinguish National Wrestling Coaches Association, and nowhere does he explain how declaratory and injunctive relief against the federal defendants would modify Washington's (or Olympia's) allegedly harmful marijuana policies. This failure, alone, warrants dismissal of West's case for want of jurisdiction.[5] See Bancoult v. McNamara, 227 F. Supp. 2d 144, 149 (D.D.C. 2002) ("[I]f the opposing party files a responsive memorandum, but fails to address certain arguments made by the moving party, the court may treat those arguments as conceded, even when the result is dismissal of the entire case.").

## II.   THE COLE MEMO IS AN UNREVIEWABLE EXERCISE OF PROSECUTORIAL DISCRETION

The Court will also dismiss West's complaint for a second reason. At its core, West's complaint challenges an Executive Branch decision to adopt a non-enforcement policy regarding

---

preferred inference (i.e., that injurious city and state actions are fairly traceable to the Department of Justice's marijuana policy) is "speculative at best" and thus insufficient to support standing. Simon, 426 U.S. at 43.

[5] Moreover, West could not establish redressability here. He has, after all, failed to show (without resort to speculative inferences) that the federal defendants caused Washington and other third-party actors to take the actions that supposedly harmed him. And speculation is just as inappropriate when analyzing the redressability requirement of standing as it is when considering the causation requirement. See Simon, 426 U.S. at 43–44. Therefore, although West forfeited any arguments he might have had on the redressability question, the Court nonetheless concludes that those arguments would not have saved his complaint from dismissal.

8

certain violations of the federal drug laws in the State of Washington. But this decision is presumptively unreviewable in the federal courts. See, e.g., Wayte v. United States, 470 U.S. 598, 607 (1985) ("[The government's] broad discretion rests largely on the recognition that the decision to prosecute is particularly ill-suited to judicial review."); In re Sealed Case, 131 F.3d 208, 214 (D.C. Cir. 1997) ("In the ordinary case, the exercise of prosecutorial discretion . . . has long been held presumptively unreviewable."). The bulk of West's complaint—like others that challenge such unreviewable decisions—must therefore be dismissed for lack of subject-matter jurisdiction. See, e.g., Sierra Club v. Whitman, 268 F.3d 898, 905–06 (9th Cir. 2001); INSLAW, Inc. v. Thornburgh, 753 F. Supp. 1, 5–6 (D.D.C. 1990).

West, of course, could have tried to rebut this presumption. He might have argued, for example, that the Department's non-enforcement decision was deliberately based on race, religion, or some other arbitrary classification, see Wayte, 470 U.S. at 608; that the Controlled Substances Act has somehow limited the power of prosecutors to exercise their usual discretion, see Heckler v. Chaney, 470 U.S. 821, 833 (1985); or that the Cole Memo amounted to a "general policy . . . so extreme as to amount to an abdication of [the Department's] statutory responsibilities," id. at 833 n.4 (internal quotation marks omitted). Alternatively, West might have argued that he is not challenging the Department of Justice's enforcement policy at all, but is, instead, questioning the agency's interpretation of "the substantive requirements of the [Controlled Substances Act]." Edison Elec. Inst. v. EPA, 996 F.2d 326, 333 (D.C. Cir. 1993). But West did not choose any of these paths; and even if he had, they would not take him very far. The Court detects not a hint of arbitrary classification in this case; the Controlled Substances Act does nothing to limit the Department's discretionary enforcement power, see United States v. Canori, 737 F.3d 181, 185 (2d Cir. 2013) (recognizing prosecutorial discretion under the

Controlled Substances Act); and the Cole Memo makes clear that it "is intended solely as a guide to the exercise of . . . prosecutorial discretion," and therefore neither limits the power of prosecutors to enforce the federal drug laws nor offers any interpretation of (or modification to) those laws. Cole Memo at 4.

Moreover, the one argument that West <u>did</u> raise in opposition to dismissal is unconvincing. As he explains, his complaint was meant to "challenge the <u>underlying federal decision</u> [that is, the decision of the Attorney General and the President to refocus the federal government's drug-enforcement efforts], not the Cole Memorandum"—which West considers to be the mere "'outward manifestation'" of this earlier, underlying, and (he thinks) challengeable policy choice. Pl.'s Opp'n at 3 (emphasis in original). But this is a distinction without a difference. The President's (or the Attorney General's) "underlying . . . decision" regarding drug-enforcement priorities, is—like the Cole Memo itself—a quintessential exercise of prosecutorial discretion that is shielded from judicial review. To hold otherwise would be to enmesh this Court in "a complicated balancing of a number of factors which are peculiarly within [the Executive's] expertise"—not the Judiciary's. <u>Heckler</u>, 470 U.S. at 831; <u>see also id.</u> at 831–32 ("The agency is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities."). This the Court will not do. West's challenge must therefore be dismissed.

One final wrinkle warrants brief discussion. In addition to West's many constitutional claims (which have been dismissed under Rule 12(b)(1) for lack of jurisdiction), West's complaint asserts claims under the NEPA and the APA, arguing that the federal government's marijuana policy represents a "Major Federal Action" taken in violation of these statutes. <u>See</u> Am. Compl. at 17. But these claims fail too. West offers no basis for finding that the Cole

Memo (or some "underlying" decision) implicates the NEPA.  Indeed, the authorities suggest the contrary.  See 28 C.F.R. § 61.4 ("major federal action" does not include "action taken . . . within the framework of judicial or administrative enforcement proceedings or civil or criminal litigation" or "the rendering of legal advice"); see also United States v. Glenn-Colusa Irrigation Dist., 788 F. Supp. 1126, 1134 (E.D. Cal. 1992) ("The District's interpretation . . . would lead to a highly impractical result in which any decision of a law enforcement agency—whether to go forward with an action or forbear from action—would require a NEPA analysis.").  And the presumption of unreviewability discussed above is just as strong in APA actions as it is in other cases.  See Heckler, 470 U.S. at 832 ("[A]n agency's decision not to take enforcement action should be presumed immune from judicial review under [the APA].").  The Court notes, however, that these particular claims fail under Rule 12(b)(6) for failure to state a claim, and not under Rule 12(b)(1) for lack of jurisdiction.  See Sierra Club v. Jackson, 648 F.3d 848, 854 (D.C. Cir. 2011) (12(b)(6) dismissal of APA claim); Int'l Ctr. for Tech. Assessment v. Thompson, 421 F. Supp. 2d 1, 9–10 (D.D.C. 2006) (same for NEPA claim).  "While it does not in the end affect the outcome, . . . [t]he distinction . . . is important."  Jackson, 648 F.3d at 853.

## CONCLUSION

The Court will therefore grant the federal defendants' motion to dismiss this case pursuant to Rules 12(b)(1) and 12(b)(6).  A separate Order has issued on this date.

/s/
JOHN D. BATES
United States District Judge

Dated:  February 9, 2015