## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**ARTHUR S. WEST,**

**Plaintiff,**

v.

**ERIC H. HOLDER, JR., et al.,**

**Defendants.**

**Civil Action No. 14-98 (JDB)**

## MEMORANDUM OPINION

Plaintiff Arthur West filed a pro se complaint in January 2014 against the United States Department of Justice and Washington State officials.  West claimed the federal government's alleged involvement in Washington's legalization of recreational marijuana use violated several provisions of the United States Constitution (including the Fourth, Fifth, Ninth, Tenth, Eleventh, and Fourteenth Amendments, as well as the Supremacy and Guarantee Clauses), the National Environmental Policy Act ("NEPA"), and the Administrative Procedure Act.  Am. Compl. [ECF No. 14] at 11–12, 18–19.  The supposed federal involvement included a memorandum issued by Deputy Attorney General James Cole, which, according to West, "approv[ed] State recreational marijuana legalization schemes" and subjected states to "coercive federal conditions and requirements."  Id. at 11; see also Mem. From James M. Cole (Aug. 29, 2013), available at http://www.justice.gov/iso/opa/resources/3052013829132756857467.pdf    (hereinafter    "Cole Memo").

In August 2014, however, this Court granted the state defendants' motion to dismiss for lack of personal jurisdiction.  See West v. Holder, 60 F. Supp. 3d 190, 192 (D.D.C. 2014) (hereinafter "West I").  Then, in February 2015, this Court granted the federal defendants' motion

to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), concluding that West had no Article III standing, and that the Department of Justice's exercise of prosecutorial discretion was presumptively unreviewable.  See West v. Holder, 60 F. Supp. 3d 197, 204 (D.D.C. 2015) (hereinafter "West II").  In a submission received March 27, 2015, West has asked the Court to reconsider that February decision.[1]  That motion is now ripe, but for the reasons explained below, this Court will deny West's motion.

## STANDARD OF REVIEW

Although the Federal Rules of Civil Procedure do not expressly address motions for reconsideration, see Lance v. United Mine Workers for Am. 1974 Pension Trust, 400 F. Supp. 2d 29, 31 (D.D.C. 2005), a motion to reconsider a final judgment is generally treated as a Rule 59(e) or Rule 60(b) motion, see Anyanwutaku v. Moore, 151 F.3d 1053, 1057 (D.C. Cir. 1998); Roane v. Gonzales, 832 F. Supp. 2d 61, 64 (D.D.C. 2011).  A similar analysis applies to West's motion under either rule.  See Elec. Privacy Info. Cntr. v. U.S. Dept. of Homeland Sec., 811 F. Supp. 2d 216, 224 (D.D.C. 2011).

That said, a Rule 59(e) motion to alter or amend a judgment must be made within twenty-eight days after the entry of judgment. Fed. R. Civ. P. 59(e).  The Court does not have the authority to extend this deadline.  See Fed. R. Civ. P. 6(b)(2); Lightfoot v. Dist. of Columbia, 555 F. Supp. 2d 61, 65 (D.D.C. 2008) ("District Courts do not have discretion to enlarge Rule 59(e)'s timing requirement.").  And here, West's motion for reconsideration was made on March 27, 2015—

---

[1] Although West moved the Court to reconsider and vacate "the decision of February 20, 2014," see Pl.'s Mot.  for Reconsideration [ECF No. 31] ("Pl.'s Mot.") at 1, the Court assumes West means the February 9, 2015 Memorandum Opinion and Order, see West II, 60 F. Supp. 3d at 204.

forty-six days after this Court's final judgment on February 9—which means West's motion is untimely under Rule 59(e).[2]

This leaves Rule 60(b), and this Court will characterize West's motion for reconsideration as a motion for relief from final judgment under that rule. See Computer Prof'ls for Soc. Responsibility v. U.S. Secret Serv., 72 F.3d 897, 903 (D.C. Cir. 1996) (finding that "[a]n untimely motion under Rule 59(e) may be considered as a motion under Rule 60(b)"). "[A] district court enjoys significant discretion in deciding whether to grant or deny a Rule 60(b) motion." Id. And the cases are quite clear that "Rule 60(b) is not a 'vehicle for presenting theories or arguments that could have been raised previously.'" Walsh v. Hagee, 10 F. Supp. 3d 15, 19 (D.D.C. 2013) (quoting Fund for Animals v. Williams, 311 F. Supp. 2d 1, 5 (D.D.C. 2004)). Finally, "[m]otions for reconsideration are 'disfavored' and 'granting . . . such a motion is . . . an unusual measure.'" Id. at 18 (quoting Cornish v. Dudas, 813 F. Supp. 2d 147, 148 (D.D.C. 2011)). West thus bears a heavy burden of proof, as he must demonstrate that there are extraordinary circumstances in this case that justify post-judgment relief. See id.

## DISCUSSION

Before discussing the merits, it is necessary to clarify the status of this Court's jurisdiction. On April 1, West filed a notice of appeal to the United States Court of Appeals for the District of Columbia Circuit. See Notice of Appeal [ECF No. 32] at 1. In the usual case, filing a notice of appeal "confers jurisdiction on the court of appeals and divests the district court of control over those aspects of the case involved in the appeal." Griggs v. Provident Consumer Disc. Co., 459

---

[2] This Court granted West an extension of time to move for reconsideration, but West's motion for an extension did not specify what rule he planned to leverage for that reconsideration. See Pl.'s Mot. for Extension of Time to File [ECF No. 30] at 1. Some motions for reconsideration, after all, fall under Federal Rule of Civil Procedure 54, see Sibley v. Obama, 819 F. Supp. 2d 45, 54 (D.D.C. 2011) (characterizing motion for reconsideration as a request under Rule 54(b) because the Court did not fully adjudicate all of plaintiff's claims), in which case an extension can be appropriate. This Court therefore did not, and has no authority to, extend the time to file West's motion for reconsideration under Rule 59(e).

U.S. 56, 58 (1982) (per curiam).  However, if a Rule 60(b) motion and an appeal are pending at the same time, the district court may consider the motion.  LaRouche v. U.S. Dep't of Treasury, 112 F. Supp. 2d 48, 51–52 (D.D.C. 2000).  If the district court decides to grant relief and issue an indicative ruling, the appellant may move the appellate court to remand the case so that relief may be granted.  If the district court decides to deny the motion for reconsideration, it has the authority to do so while the appeal is pending.  Id. (citing Smith v. Pollin, 194 F.2d 349, 350 (D.C. Cir. 1952)).  Therefore, notwithstanding the pending appeal, this Court has the authority to both consider and deny West's motion for reconsideration.[3]

Turning to the merits, then, West argues for reconsideration due to his discovery of "new evidence previously unavailable" and (supposed) "plain error[s]" in the Court's application of the law.  Pl.'s Mot. at 1, 8.  The provisions relevant to such claims are Rule 60(b)(2), which grants relief due to "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)," and Rule 60(b)(6), which grants relief for "any other reason that justifies relief."  Fed. R. Civ. P. 60(b)(2), (6); see also Robinson Reeder v. Am. Council on Educ., 674 F. Supp. 2d 49, 59 (D.D.C. 2009) (finding that an allegation of "massive errors" is properly characterized as a motion pursuant to Rule 60(b)(6)).[4]  But neither provision supports West's motion.  First, Rule 60(b)(2) relief is not warranted because West's new evidence is merely cumulative and would not change the outcome of the case.  Second, relief under

---

[3] Moreover, the D.C. Circuit ordered that the appeal in this case be held in abeyance pending the conclusion of this Court's motion-to-reconsider proceedings.  See Apr. 13, 2015 Order [ECF No. 39] at 1.  Thus, the Court has authority to consider the motion, and its decision will not interfere with any appellate proceedings.

[4] "Rule 60(b)(1) typically encompasses 'mistake, inadvertence, surprise, or excusable neglect' of the parties, but this circuit also allows the rule to reach the court's alleged legal errors in the very limited situation when the controlling law of the circuit changed between the time of the court's judgment and the Rule 60 motion."  Bestor v. FBI, 539 F. Supp. 2d 324, 328 (D.D.C. 2008) (quoting Ctr. for Nuclear Responsibility, Inc. v. U.S. Nuclear Regulatory Comm'n, 781 F.2d 935, 939 (D.C. Cir. 1986)).  However, West does not allege any change in controlling law, nor has there been any, so Rule 60(b)(1) is inapplicable here.

Rule 60(b)(6) is likewise inappropriate because West has not identified any extraordinary circumstances rising to the level of clear error or manifest injustice.

## I.    MOTION FOR RECONSIDERATION UNDER RULE 60(b)(2)

West's "new" evidence does not justify relief from this Court's final judgment.  Under Rule 60(b)(2), West must demonstrate: "(1) the newly discovered evidence is of facts that existed at the time of trial or other dispositive proceeding; (2) the party seeking relief was justifiably ignorant of the evidence despite due diligence; (3) the evidence is admissible and is of such importance that it probably would have changed the outcome; and (4) the evidence is not merely cumulative or impeaching."  Duckworth v. United States ex rel. Locke, 808 F. Supp. 2d. 210, 216 (D.D.C. 2011).

West offers new evidence in both his motion for reconsideration and a ninety-two page declaration of "new evidence not available to the plaintiff prior to filing his Motion to Reconsider." Pl.'s Civ. Statement [ECF No. 41] ("Civ. Statement") at 1.  That evidence is quite wide-ranging. It includes:  additional facts about a marijuana store near the Olympia Food Coop; complaints filed in the United States District Court for the District of Colorado alleging, among other things, that marijuana businesses make bad neighbors; a Washington State Bill Analysis of HB 2000 stating that the Cole Memo is widely interpreted to allow states to proceed with legalization efforts; a Thurston County Superior Court order finding that the Washington State Liquor Control Board violated the Open Public Meetings Act on seventeen occasions; minutes from a Washington law enforcement meeting that involved local and federal agencies; a letter from Washington mayors referring to "eight mandates for legalized marijuana from the federal government"; a 2014 Washington city and county marijuana policy agenda; a declaration by James Barber; Washington State Bill SSSB 5052, which, West claims, imposes hardships on medical marijuana users; and

Bill Reports for SSSB 5052 and SSHB 2136 referencing the Cole Memo.[5]  Pl's Mot. at 2–3, 10–18, 24–40; see also Civ. Statement at 1–92.

This may be quite a bit of "evidence," but none of it justifies reconsideration under Rule 60(b)(2).  To start, West has not met his burden of proving that (1) the evidence speaks to facts that existed at the time of this Court's dispositive proceeding, and (2) he was justifiably ignorant of such evidence despite due diligence.  See Norris v. Salazar, 277 F.R.D. 22, 25 (D.D.C. 2011) (finding party seeking relief under Rule 60(b) bears the burden of proof).  For example, the Thurston Superior Court order is dated October 31, 2014; the minutes are from a meeting in 2013; the policy agenda is for 2014; and it is not clear whether the allegedly harmful effect of SSSB 5052 existed at the time of the dispositive proceeding.  All of this evidence therefore existed before this Court's February 2015 order, and West has not explained why he failed to present the evidence earlier.  The timeline of much of this evidence therefore does not work in West's favor.

But, even assuming all of West's new evidence meets these timing requirements, none of the evidence is "of such importance that it probably would have changed the outcome." Duckworth, 808 F. Supp. 2d. at 216.  Indeed, none of the evidence changes the fact that West still lacks standing to bring these claims.  For example, the complaints in the Colorado District Court and the declaration by James Barber demonstrate, at best, that other people have suffered injuries— not that West himself suffered any injury.  Moreover, even if the Court grants that West suffered some injury, none of the evidence establishes "a causal connection between the injury and the conduct complained of" or that a favorable decision on the merits will redress the injury.  Lujan v.

---

[5] West also asks the Court to consider Nebraska and Oklahoma's pending lawsuit against Colorado along with related documents including a letter from Oklahoma state representatives and a brief by former Drug Enforcement Agency administrators.  See Pl.'s Mot. at 19–23; Civ. Statement at 2.  However, nothing about this evidence brings to light new facts concerning West's case.  Rather, West is using the documents to make new legal arguments that were made in another, separate case.  Rule 60(b) motions, however, are not the proper place to introduce new legal theories or arguments.  See Walsh, 10 F. Supp. 3d at 19.

<u>Defenders of Wildlife</u>, 504 U.S. 555, 560–61 (1992).  In other words, West's new evidence fails to show how the actions of the federal defendants (e.g., the Cole Memo) caused his alleged injuries. Nor has he shown that the Court can do anything to fix those injuries.  West's "new" evidence simply is not enough.  <u>See</u> <u>Sibley</u>, 819 F. Supp. 2d at 54 (denying motion for reconsideration despite new evidence that plaintiff's medicinal marijuana company's checking account was terminated because there was no evidence that federal defendants caused the bank to close his account); <u>Taitz v. Obama</u>, 754 F. Supp. 2d 57, 60–61 (D.D.C. 2010) ("[A]bsent causation and redressability, plaintiff's alleged evidence of fraudulent conduct does nothing to establish standing. Plaintiff thus offers no evidence meriting reconsideration under Rule 60(b).").

And in any event, West's new evidence is merely cumulative.  <u>See</u> <u>Duckworth</u>, 808 F. Supp. 2d. at 216.   West has previously alleged that recreational marijuana has harmful environmental effects on the Olympia Coop.  <u>See</u> Pl.'s Opp'n to Mot. to Dismiss [ECF No. 24] ("Pl.'s Opp'n") at 5.  He has already produced documents indicating that federal and state actors communicated about drug enforcement policies.  <u>Id.</u> at 2–3; <u>see also</u> Pl.'s Aff. [ECF No. 26] at 1– 2.  And he has already provided the Court with many local and state documents that reference the Cole Memo.  <u>See</u> Pl.'s Opp'n at 8–9; Pl.'s Aff. at 3–22.  All of this evidence was before the Court in the first go-around, but the Court concluded then (as it does now) that the allegations were simply too speculative to establish standing.  <u>See</u> <u>West II</u>, 60 F. Supp. 3d at 200–03.  West's "new" evidence consists of the same kinds of documents and relies on the same highly speculative inferences.  Thus, while he has added more pages to the docket, the nature and quality of the evidence remains the same.  West's motion for reconsideration under Rule 60(b)(2) will therefore be denied.  <u>See</u> <u>Obaydullah v. Obama</u>, 920 F. Supp. 2d 14, 15 (D.D.C. 2013) (denying a Rule

60(b)(2) motion after finding that "[m]uch of this evidence is not new at all—[it is] simply a rehash

of evidence that [the court] already considered and dismissed when denying [plaintiff's] petition").

## II.   MOTION FOR RECONSIDERATION UNDER RULE 60(b)(6)

Relief would also be inappropriate under Rule 60(b)(6).  That rule is a catch-all provision

giving courts discretion to vacate judgments when it is "appropriate to accomplish justice."

Klapprott v. United States, 335 U.S. 601, 615 (1949).  Such motions should be used "sparingly"

and only in "extraordinary circumstances."  Good Luck Nursing Home, Inc. v. Harris, 636 F.2d

572, 577 & n.3 (D.C. Cir. 1980) (internal quotation marks omitted).  For example, relief might be

appropriate when a party presents a "previously undisclosed fact so central to the litigation that it

shows the initial judgment to have been manifestly unjust," id. at 577, or when the petitioner is

"deprived of any reasonable opportunity to make a defense," Ackermann v. United States, 340

U.S. 193, 199 (1950).  "The Supreme Court has not retreated from this restrictive understanding

of Rule 60(b)(6)."  Salazar v. Dist. of Columbia, 633 F.3d 1110, 1120 (D.C. Cir. 2011).  Thus,

"plaintiffs must clear a very high bar to obtain relief under [this rule]."  Kramer v. Gates, 481 F.3d

788, 792 (D.C. Cir. 2007).

In this case, no such extraordinary circumstances exist.  Although West claims the Court

erred in its previous decision, he has not uncovered any errors here—and certainly no clear errors

or manifest injustices.  Rather, the Court finds that West has simply rehashed the same old

arguments.  "Re-litigating arguments or legal theories that could have been raised earlier do[es]

not qualify as an 'extraordinary circumstance.'"  Lardner v. FBI, 875 F. Supp. 2d 49, 53 (D.D.C.

2012).  Thus, Rule 60(b)(6) does not warrant reconsideration here.

West, of course, disagrees.  First, he argues that "the Court erred in failing to apply the

correct standard under NEPA," which (he says) has minimal standing requirements.  Pl.'s Mot. at

2.  But as the Court has explained once already, NEPA does not apply to this case because the federal decisions underlying the Cole Memo are not major federal actions, and thus they are not subject to that statute's restrictions.  See 28 C.F.R. § 61.4 ("major federal action" does not include "action taken . . . within the framework of judicial or administrative enforcement proceedings or civil or criminal litigation" or "the rendering of legal advice"); see also West II, 60 F. Supp. 3d at 204.  Moreover, even if NEPA applied, that would not excuse West's failure to otherwise meet the standing requirements of Article III.  See Summers v. Earth Island Inst., 555 U.S. 488, 496 (2009) ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right in vacuo—is insufficient to create Article III standing.").

Second, West tries to rebut the presumption that enforcement decisions are unreviewable, arguing that his complaint did assert that the federal government's underlying decision interpreted the Controlled Substances Act ("CSA") and constituted a policy so extreme as to abdicate statutory responsibilities.  See Pl.'s Mot. at 4–5.  But this is plainly incorrect.  West's complaint alleges no such thing—as this Court previously held.  See West II, 60 F. Supp. 3d at 203–04.  Rule 60(b) cannot "be employed simply to rescue a litigant from strategic choices that later turn out to be improvident."  Good Luck, 636 F.2d at 577.  And as this Court has also noted, even if West made such arguments, they would have been unsuccessful.  See West II, 60 F. Supp. 3d at 203–04; see also Cole Memo at 4 (the memo "is intended solely as a guide to the exercise of . . . prosecutorial discretion," and it at no point tries to interpret the text of the CSA).

Moreover, the Cole Memo does not "abdicate" statutory responsibility.  It establishes a list of eight priorities for federal prosecutors, telling them to use their "limited investigative and prosecutorial resources to address the most significant threats in the most effective, consistent, and rational way."  Cole Memo at 1.  But the Cole memo clearly states that such guidance "does not

alter in any way the Department's authority to enforce federal law . . . regardless of state law." <u>Id.</u> at 4.  This kind of guidance is exactly the kind of discretion the Supreme Court intended to protect from judicial review.  <u>See</u> <u>Heckler v. Chaney</u>, 470 U.S. 821, 843 (1985) ("As long as the agency is choosing how to allocate finite enforcement resources, the agency's choice will be entitled to substantial deference, for the choice among valid alternative enforcement policies is precisely the sort of choice over which agencies generally have been left substantial discretion by their enabling statutes.").  Thus, the Cole Memo is an exercise of prosecutorial discretion designed to best serve the Department of Justice's responsibilities under the CSA—not to abdicate them.

Third, West claims that the Court erred because it failed to recognize his express claim that judicial relief could redress his injuries.  <u>See</u> Pl.'s Mot. at 5–6.  But simply claiming that an injury is redressable is not enough; this Court was not looking for magic words.  It was, instead, expecting a response to the federal defendants' argument that West has not established redressability because it is "'purely speculative that a requested change in government policy w[ould] alter the behavior of regulated third parties that are the direct cause of plaintiff's injuries.'"  Gov't's Mot. to Dismiss [ECF No. 20–1] at 17 (quoting <u>Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.</u>, 366 F.3d 930, 938 (D.C. Cir. 2004)).  West did not respond to the government's argument on this score in the last iteration of this case, and he has not meaningfully responded to it now.  The Court therefore has no basis to reconsider its previous redressability holding.[6]

Fourth, West claims that "the court erred in failing to recognize the covert participation of the federal government in the state policymaking and rulemaking process before and after the Cole memorandum."  Pl.'s Mot. at 6.  But this is wrong too.  The Court thoroughly reviewed all of

---

[6] West also suggests that an environmental impact statement ("EIS") would redress his injuries, <u>see</u> Pl.'s Mot. at 6, but that relief is specific to his NEPA claim, and this Court has already established that NEPA (and its EIS provision) is inapplicable to this case.

West's proffered evidence (including his allegations of back-room meetings between federal and state authorities), and it still found that West had no standing, and that the federal activities were an unreviewable exercise of prosecutorial discretion.  The Court recognized West's evidence—that evidence just was not enough.  See West II, 60 F. Supp. 3d at 204.

Finally, West claims that "the Court erred in segmenting adjudication," or, put differently, that it failed to join the Washington State defendants as necessary parties in West's case, which hurt his ability to put forth a cognizable claim.  Pl.'s Mot. at 7.  But any failure on this front was actually West's doing—he failed to demonstrate that this Court had personal jurisdiction over these state actors, and so the Court had no choice but to dismiss them from the case.  See West I, 60 F. Supp. 3d at 196.  Moreover, West ought not turn the present motion, which expressly requests reconsideration of only the February opinion, into a motion to reconsider everything about this case—including the Court's August 2014 opinion granting the state defendants' motion to dismiss.[7]  In sum, West has not demonstrated that any extraordinary circumstances exist that would justify relief under Rule 60(b)(6).

## **CONCLUSION**

The Court will therefore deny West's motion for reconsideration. A separate Order has issued on this date.

/s/
_____
JOHN D. BATES
United States District Judge

Dated:  June 16, 2015

---

[7] In the interest of thoroughness, however, the Court confirms that the state defendants were not necessary parties.  A party is necessary under Federal Rule of Civil Procedure 19 if (1) "the court cannot accord complete relief among existing parties" without them or (2) the absent party "claims an interest related to the subject of the action and is so situated that disposing of the action" without them may "impair or impede the [absent party's] ability to protect the interest" or "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest."  Fed. R. Civ. P. 19(a)(1)(A)–(B).  The state defendants do not qualify as necessary parties under either standard, nor does West argue that they do.  At best, West argues that the state defendants also caused his injuries, but "[i]t has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit."  Temple v. Synthes Corp., 498 U.S. 5, 7 (1990).